UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RED LION HOTELS FRANCHISING, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAK, LLC; MAHMOUD KARIMI a/k/a Mike Karimi and JANE DOE KARIMI, individually and as a marital community, <br><br> Defendants. | NO. CV-08-262-EFS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

A hearing occurred in the above-captioned matter on January 20, 2010. Douglas C. Berry appeared on behalf of Plaintiff Red Lion Hotels Franchising, Inc. ("Red Lion"); Michael A. Maurer appeared for Defendants MAK, LLC, Mahmoud Karimi, and Jane Doe Karimi ("MAK"). Before the Court was Red Lion's Motion for Partial Summary Judgment, in which it moved to dismiss MAK's counterclaims under the Washington Franchise Investment Protection Act ("FIPA") and Washington Consumer Protection Act ("WCPA"). For the reasons stated below, the Court grants Red Lion's motion and dismisses those claims.

ORDER * 1

## I. Background

Red Lion is a hotel chain based in Spokane. Formerly known as WestCoast Hotels, Inc., it franchises and owns hotels in several western states and in Canada. (Ct. Rec. 46 at 2-3.)

In December 2004, the Red Lion hotel in Modesto, California was in bad shape. Since 2001, Lindquist & Craig, a hotel management company that formerly employed Defendant Karimi, had managed the property as a Red Lion, but Lindquist & Craig entered bankruptcy and let the property lapse. *Id.* at 1-3. The Khatri Brothers, friends of Mr. Karimi who owned the property, convinced Mr. Karimi and MAK, the company of which he was principal, to manage the property. MAK signed a ninety-nine year lease for the hotel. *Id.* at 3.

At first, Mr. Karimi did not want to operate the hotel as a Red Lion because it was in such poor condition. But Red Lion's Executive Vice President for Hotel Operations, John Taffin, convinced Mr. Karimi to sign a new franchise agreement. *Id.* at 3-4. As part of this agreement, MAK was able to negotiate several non-standard concessions. For example, the franchise term was shortened to five years and the standard royalty rate in the first year of operation was reduced. The parties' franchise agreement became effective on February 1, 2005. *Id.*

Under the franchise agreement, MAK was required to make the changes specified in Red Lion's Property Improvement Plans ("PIPs"). *Id.* These were periodic directives for specific property improvements. During this time Red Lion was trying to improve its image by implementing improved uniform standards in all its hotels. *Id.* at 5-6. A new PIP was explained to franchisees during a January 2007 meeting. *Id.* at 6.

ORDER ∗ 2

On May 1, 2007, Red Lion issued a PIP to MAK that identified 121 improvements for the Modesto Red Lion, which MAK was supposed to complete by December 31, 2007. *Id.;* (Ct. Rec. 48 Ex. D.) MAK took considerable pains to comply with this PIP. (Ct. Rec. 57 Ex. C at 126.) After issuing the PIP, Red Lion representatives visited three times to assess MAK's progress: Mr. Taffin visited in July 2007, and Todd Cooley visited in November 2007 and July 2008. (Ct. Rec. 46 at 6-7.) During Mr. Cooley's November 2007 visit he met with MAK employee Lori Knoll, who does not remember that Mr. Cooley said that MAK was behind schedule in implementing the PIP. (Ct. Rec. 57 Ex. D at 51.)

On June 17, 2008, MAK received a letter from Red Lion that said MAK was in default of the franchise agreement and Red Lion would terminate the franchise if MAK did not complete improvements within thirty days. (Ct. Rec. 48 Ex. E.) Two days later MAK wrote to Red Lion that it had completed all but four of the improvements in the PIP and that these four were scheduled to be completed in August 2008. *Id.* Ex F. MAK also indicated that it could complete the improvements within thirty days of the notice if necessary. *Id.* Red Lion never responded to this letter.

Mr. Cooley visited for a second time on July 8, 2008, twenty-two days after Red Lion sent its notice of default. (Ct. Rec. 57 Ex. D at 67.) This inspection lasted no longer than seven minutes. *Id.* According to Ms. Knoll, Mr. Cooley apparently did not know what improvements Red Lion required MAK to finish. *Id.* at 72; (Ct. Rec. 57 Ex. F.) MAK claims it completed the remaining improvements within thirty days of the notice of default. (Ct. Rec. 57 Ex. C at 123, 128, 130.)

Red Lion's attorney sent another letter to MAK on July 30, 2008. (Ct. Rec. 48 Ex. G.) In it he indicated that Mr. Cooley found the

ORDER ~ 3

improvements were not applied consistently throughout the property as MAK described in its letter. Therefore, Red Lion terminated MAK's franchise effective August 1, 2008. *Id.* MAK rebranded the hotel and continues to operate it.

Red Lion sued on August 20, 2008, to collect franchise royalties MAK owed before termination and liquidated damages for early termination. MAK counterclaimed for violations of FIPA and WCPA and breach of the franchise agreement.

## II. Discussion

**A.  Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

ORDER ~ 4

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.   FIPA Claims**

Red Lion argues that MAK cannot invoke FIPA's protections because MAK's franchise was outside Washington. It asserts the California Franchise Relations Act applies, and that statute does not provide the remedy MAK seeks in its counterclaim.

In a federal question case involving supplemental jurisdiction over state law claims, a federal court must apply the choice of law rules of the forum state. *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted). Therefore, Washington choice of law rules apply. In this case, the parties chose Washington law to govern their franchise agreement. (Ct. Rec. 49 Ex. A at 25.) Washington courts apply parties' contractual choice of law unless the chosen state has no substantial relationship to the parties or application of the chosen law

ORDER * 5

would conflict with a fundamental state policy. *Schnall v. AT & T Wireless Servs., Inc.*, --- P.3d ----, 2010 WL 185943, at *2 (Wash. Jan. 21, 2010). The Court applies Washington law according to the parties' agreement because 1) Red Lion is a Washington corporation with its principal place of business in Spokane, and 2) it does not violate a fundamental state policy for a Washington court to apply Washington law.

This does not automatically mean that FIPA applies, however, because FIPA may limit its territorial reach. Additionally, the franchise agreement says that it is governed by Washington law except that "[n]othing in this section is intended to invoke the application of any franchise. . . law of the State of Washington. . . which would not otherwise apply absent this paragraph." (Ct. Rec. 49 Ex. A at 25.) If, as Red Lion claims, FIPA does not apply to franchises outside Washington, neither Washington law nor the franchise agreement permits the Court to apply FIPA to this case.

To support its assertion that FIPA has territorial limits, Red Lion relies on RCW 19.100.020. That section proscribes selling or offering for sale an unregistered franchise in the state. As amended in 1991, that section clarified substantial confusion about the meaning of "in this state" because it defined "in this state" "for the purposes this section." Before the definition was added, the section's territorial limits were not clearly delineated.

Recently, Judge Coughenour of the Western District of Washington concluded that this section "demonstrated a clear intent to limit the territorial scope of the Act to specific conduct that can be said to occur 'in this state.'" *Taylor v. 1-800-Got-Junk?, LLC*, 632 F. Supp. 2d 1048, 1052 (W.D. Wash. 2009). He noted that the history of the statute's

ORDER * 6

passage and amendment confirmed that the term "in this state" was designed "to provide a territorial limitation on the scope of the Act." *Id.* Commentator Donald Chisum noted that the lack of a definition for "in this state" muddled the boundaries of FIPA's coverage, and suggested that Washington adopt a definition similar to the one contained in the California Franchise Investment Act. *Id.* The current definition is nearly identical to the California provision Chisum suggested as a model. *Cf.* RCW 19.100.020 *with* Cal. Corp. Code § 31013. Accordingly, Judge Coughenour held that all of FIPA is limited by its terms to franchises within Washington. *Id.*[1]

The Court agrees with Red Lion that the overall statutory scheme evinces the legislature's intent to confine FIPA's reach to franchises operating "in this state." Although RCW 19.100.180, the section under which MAK sues, is not expressly limited to conduct "in this state," the Court looks to the statute as a whole when interpreting this section. *See Azarte v. Ashcroft*, 394 F.3d 1278, 1287–88 (9th Cir. 2005) (noting that courts must look at the "whole act" when interpreting a statute) (citations omitted). Several FIPA provisions expressly limit their

---

[1] Judge Coughenour also considered whether the parties' choice of law provision, which specified that Washington law applied, could override FIPA's territorial limitations. *Id.* at 1052–54. The Court need not address this point because the franchise agreement in this case specified that Washington franchise law would not apply to the agreement unless it did so on its face. (Ct. Rec. 49 Ex. A at 25.) Because the Court concludes that FIPA does not apply on its face, it understands the agreement does not invoke FIPA.

ORDER * 7

application to conduct "in this state." *See*, *e.g.*, RCW 19.100.020 (prohibiting sale and offers to sell unregistered franchises); 19.100.100 (prohibiting unauthorized franchise advertisements); 19.100.110 (prohibiting false or misleading franchise advertisements); 19.100.140 (requiring franchise brokers to register with the state director of financial institutions); 19.100.170 (prohibiting fraud in connection with the offer, sale, or purchase of franchises). Taking together this statutory framework and the 1991 amendments, which responded to Chisum's criticism, the Court believes that the legislature intended to confine FIPA to franchises operating in the state. Therefore, MAK's franchise must fit within the statutory definition in order for it to counterclaim under FIPA.

RCW 19.100.020, which defines "in this state," reads:

> (2) For the purpose of this section, an offer to sell a franchise is made in this state when: (a) The offer is directed by the offeror into this state from within or outside this state and is received where it is directed, (b) the offer originates from this state and violates the franchise or business opportunity law of the state or foreign jurisdiction into which it is directed, (c) the offeree is a resident of this state, or (d) the franchise business that is the subject of the offer is to be located or operated, wholly or partly, in this state.

> (3) For the purpose of this section, a sale of any franchise is made in this state when: (a) An offer to sell is accepted in this state, (b) an offer originating from this state is accepted and violates the franchise or business opportunity law of the state or foreign jurisdiction in which it is accepted, (c) the purchaser of the franchise is a resident of this state, or (d) the franchise business that is the subject of the sale is to be located or operated, wholly or partly, in this state.

Conditions (a) and (c) from these subsections do not apply to MAK. The franchise offer in this case was directed *from* Washington *to* California, where it was accepted. Also, MAK, a California limited liability

ORDER * 8

company, is not a Washington resident. (Ct. Rec. 48 Ex. A at 2.) Condition (b) does not apply either. Although the offer originated from Red Lion in Washington, MAK does not allege that the *offer* violated California franchise law. Rather, MAK complains of Red Lion's subsequent wrongful conduct in the franchise relationship.

MAK argues that condition (d) applies because its franchise business was located and operated partly in Washington. It says that the franchise agreement granted MAK the right to use Red Lion's hotel System in connection with its operations, and that the System included operations in Washington. (Ct. Rec. 49 Ex. A at 6.) The agreement's definition of "System" reveals that MAK's franchise did not operate in Washington, however. "System" is no more than the uniform standards imposed by a franchisor designed to build a name brand:

> The System currently includes the Principal Name, the Licensed Brand and the Marks; access to a reservation service; advertising, publicity and other marketing programs and materials; training programs and materials, standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and other elements we refer to in this Agreement or in the Manual (as defined below) or in other communications to you, and programs for our inspecting the Hotel and consulting with you.

*Id.* at 5. In no way does this indicate that MAK's franchise operated in Washington. Rather, the agreement's license to MAK to use the System meant that MAK, a California company with a Red Lion franchise in California, simply was entitled and required to use the Red Lion name and brand standards in its hotel operations. Accordingly, MAK's hotel operations did not occur "in this state," Washington, and FIPA does not apply to this dispute.

ORDER \* 9

**C.   California Franchise Relation Act ("CFRA")**

MAK did not counterclaim under CFRA, California's counterpart to FIPA. Cal. Bus. & Prof. Code §§ 20000-20043. Nevertheless, because the Court finds that FIPA does not apply, it construes MAK's counterclaim as under CFRA. In contrast to FIPA, CFRA squarely applies to this dispute because MAK is domiciled in California. *See id.* § 20015.

CFRA's only remedy for wrongful franchise termination is for the franchisor to buy back unsold inventory. *Id.* § 20035. Because MAK has no inventory to purchase, it may not recover under CFRA. MAK correctly observes that CFRA does not limit contract recovery,[2] but its contract recovery must come from its claim for breach of contract.

**D.   Washington Consumer Protection Act ("WCPA")**

MAK's WCPA claim is predicated on the alleged FIPA violations. (Ct. Rec. 6 at 10.) Under FIPA, a violation of the "franchisee bill of rights," RCW 19.100.180(2), constitutes an unfair or deceptive act or practice under WCPA. RCW 19.100.190(1). The Court concludes that FIPA does not apply to this dispute, so there was no FIPA violation. Absent a FIPA violation, there is no WCPA violation in this case.

### III. Conclusion

For the reasons given above, **IT IS HEREBY ORDERED**: Red Lion's Motion for Partial Summary Judgment **(Ct. Rec. 44)** is **GRANTED**.

---

[2] *Id.* § 20037; *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 174 (2004).

ORDER * 10

1 **IT IS SO ORDERED.** The District Court Executive is directed to enter
2 this Order and distribute copies to counsel.
3    **DATED** this 15th    day of March 2010

                        S/ Edward F. Shea
5                         EDWARD F. SHEA
6                  United States District Judge

7 Q:\Civil\2008\262.SJ.wpd

ORDER * 11